IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GINA KANE and ) | |
| MARY DEATHERAGE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 06-cv-0326-MJR |
| ) | CONSOLIDATED WITH |
| COX & SONS, et al., ) | Case No. 06-cv-0327-MJR |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**A.    Introduction**

Mary Deatherage and Gina Kane filed a third amended complaint on October 17, 2006, naming eight Defendants: Cox & Sons Contracting Company, David Roth, the Roth Family Limited Partnership, the United States of America, Vantage Homes, Inc., Vantage Development Co., Vantage Homes of Illinois, LLC, and Woolpert, Inc. The suit arises from an October 2004 car accident in Fairview Heights, Illinois. Mary Deatherage was a passenger in a vehicle being driven by Gina Kane. Kane's vehicle was struck by a vehicle being driven by Emmerson Buie, an F.B.I. agent, who was acting within the scope of his employment for the United States of America at the time of the accident.

Cox & Sons Contracting Company was hired by Vantage as a subcontractor on Fountains Parkway, a residential development. Two of the contracts entered into by Cox & Sons required paving work and the construction of a berm at the development's intersection with Old Collinsville Road, the location of the accident. Plaintiffs allege that Cox & Sons was negligent in failing to place a stop sign at the intersection and in constructing a berm that obstructed the vision

of oncoming traffic at the intersection.

On August 17, 2007, Cox & Sons moved for summary judgment on the two counts against it (Counts VII and XV). For the reasons stated below, the Court **DENIES** Cox & Sons's motion (Doc. 179).

### B. Applicable Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Guzman v. Sheahan*, – F.3d –, 2007 WL 2241646, \*3 (7th Cir. Aug. 7, 2007). *Accord Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006), citing *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).**

In assessing whether summary judgment is warranted, this Court must construe all evidence, plus the inferences reasonably drawn from the evidence, in the light most favorable to the non-moving party. ***King ex rel. King v. East St. Louis School District 189*, – F.3d –, 2007 WL 2241649, \* 3 (7th Cir. August 7, 2007). *Accord Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007).**

### C. Analysis

1. Whether a Duty to Install a Stop Sign Existed

Cox & Sons first argues that it had no contractual duty to install a stop sign at the intersection. Cox & Sons acknowledges that the paving contract required that a barricade be placed at the intersection but argues that the contract did not require temporary traffic controls after the

completion of the paving contract. In his deposition, DeWayne Cox testified that barricades were used during the paving work at the intersection but that Rob Tiemann, Vantage's Project Manager, instructed Cox & Sons to remove them after the paving work was completed in January 2004 (Doc. 179, Ex. 1, pp. 53). Tiemann corroborated this testimony (Doc. 179, Ex. 2, p. 9). Cox & Sons also states that it was never asked by Vantage or the City of Fairview Heights to put up a stop sign. Cox & Sons further points to DeWayne Cox's statement that it is customary that the municipality place traffic signs rather than subcontractors (Doc. 179, Ex. 1, pp. 57-58). Moreover, Rob Tiemann's testimony states that there was an accident at the intersection a few weeks before Kane and Deatherage's, and that he instructed Eric Hussman, the superintendent at the site, to put up a stop sign and did not contact Cox & Sons to do so. (Doc. 179, Ex. 2, pp. 29-30). According to Cox & Sons, this indicates that Vantage did not believe Cox & Sons had any duty to erect stop signs in October 2004.

Though Cox & Sons provides evidence for its position, summary judgment is not proper in this instance. First, the contract includes a provision for barricades and traffic controls (Ex. A, p. 2). There is a dispute as to whether this contractual provision included temporary stop signs and other traffic controls, and for how long such controls would be provided.

Deatherage also argues that, irrespective of the contract, Cox & Sons's removal of the barricades created an obvious hazard, for which it should have provided an alternate traffic control. Deatherage points to DeWayne Cox's deposition, wherein he agreed that the intersection was hazardous unless drivers stopped. (Doc. 187, Ex. C, pp. 86-87).

Taking the evidence in the light most favorable to the non-movant, summary judgment is not merited, because there are genuine issues of material fact in dispute between the

parties.

2. Whether the "Accepted Work Doctrine" Bars Liability

Cox & Sons then argues that even if it had a contractual duty to install a stop sign, the duty was discharged upon its completion of the contract and Vantage's complete payment for the work. Cox & Sons points to the "accepted work doctrine," which provides that after work is completed and has been accepted, an independent contractor is not liable to third parties for injuries resulting from defective construction. *See Bubb v. Evans Const. Co.*, **627 N.E.2d 1160, 1162 (Ill. App. 1993).** According to Cox & Sons, the paving work was completed long before the October 2004 accident, and Cox & Sons received payment on the contract.

As Deatherage point out, however, in *McMahon v. Gorazd, Inc*., **481 N.E.2d 787 (Ill. App. 1985**), the Appellate Court of Illinois held that "the accepted work doctrine is no longer determinative of the question of liability in Illinois. Instead, the question of liability is to be determined under traditional principles of negligence." This fact is recognized in *Bubb*, where the Court looked to a variety of factors to determine that no duty existed:

> (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing that burden upon defendant.

**627 N.E.2d, at 1162-63.** Rather than merely applying the "accepted work doctrine," the court instead considered the completion and acceptance of the work as *factors* in determining whether a duty existed. Also important was the fact that the condition was not obviously dangerous and the owner of the property took steps to accept responsibility for caretaking subsequent to the completion of the contractor's work. *Id.*

Here, the fact that not all of the four *Bubb* factors clearly lean in Cox & Sons's favor,

4

coupled with disagreement between the parties as to how the contract delegated duties to provide traffic controls and for how long, militates against summary judgment. It is also noteworthy that the *Bubb* court found that a contractor has no duty to continuously re-inspect his own work eighteen months after completion, whereas Deatherage argues that the dangerous condition was created by the removal of the barricades, rather than by the paving work itself.

As a result, there are genuine issues of material fact in dispute, and summary judgment cannot be granted.

### 3. Whether Construction of the Berm Created an Obviously Dangerous Condition

Finally, Cox & Sons argues that it was not negligent in the construction of the berm, because it merely carried out the specifications of the construction plans, and the berm itself is not defective. ***Hunt v. Blasius*** provides:

> An independent contractor owes no duty to third person to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them.

**384 N.E.2d 368, 371 (Ill. 1978)**. Cox & Sons argues, and Deatherage agrees, that the berm was built to the plans and specifications provided, and that the berm itself was not defectively constructed. These facts, argues Cox & Sons, should result in a finding of summary judgment.

But Deatherage alleges that constructing the berm at the intersection in the absence of a traffic control device was obviously dangerous. This creates a genuine issue of material fact: whether the presence of the berm without an accompanying stop sign created an obviously dangerous condition. As such, summary judgment is inappropriate.

### D. Conclusion

After construing all evidence, and inferences reasonably drawn from the evidence, in the light most favorable to the non-movant, the Court **DENIES** Cox & Sons's motion for summary judgment (Doc. 179).  The Court may consider Cox & Sons's arguments again at the Rule 50 stage after evidence on the issue is presented at trial.

**IT IS SO ORDERED.**

**DATED this 25th day of October 2007.**

<u>s/ Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Court**